[No. 22416. Department One. February 21, 1931.]

WELLS CHEVROLET COMPANY, *Respondent,* v. PACIFIC
FIRE INSURANCE COMPANY, *Appellant,* WILLIAM
SCHLEGEL, *Defendant.*[1]

[1]Reported in 296 Pac. 177.

O. C. *Moore,* for appellant.

W. W. *Clarke,* for respondent.

MILLARD, J.—A policy of fire insurance covering an automobile truck was issued by the Pacific Fire Insurance Company to the Wells Chevrolet Company, as vendor and mortgagee, and to William Schlegel, as vendee and mortgagor of the insured chattel. Upon the refusal of the insurer to pay for the destruction by fire of the truck, the Wells Chevrolet Company brought this action against the insurer to recover on the policy of fire insurance. Defendant's demurrer to the complaint was overruled. The motion of the defendant that Schlegel, as the owner or reputed owner of the insured property, be joined as a party defendant, was granted.

The insurance company's defense was that, at the time of the execution of the contract of insurance, Schlegel and the chattel mortgagee falsely represented

that the truck was unencumbered, and also falsely represented that the truck was of the value of eighteen hundred dollars, when in fact its value did not exceed one hundred dollars. So far as material to this appeal, the insurance policy reads as follows:

". . . in consideration of the premium hereinafter mentioned does insure the Assured named herein, for the term herein specified, to an amount not exceeding the actual cash value of the property at the time any loss or damage occurs, . . . Name of assured Wells Chevrolet Company and/or W. M. Schlegel, . . . The automobile described is fully paid for by assured and is not mortgaged or otherwise encumbered: ENCUMBERED. Amount unpaid $1,300.00 represented by notes of $................... due date of last note . . . Subject to all the stipulations, provisions and conditions contained in this policy, loss, if any, is payable to Wells Chevrolet Company, as interest may appear. . . . This entire policy shall be void if the Assured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the Assured touching any matter relating to this insurance or the subject thereof, whether before or after loss. . . . Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage, or other incumbrance specifically set forth and described in paragraph 4 of this policy, this Company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, mortgage, or other encumbrance. TITLE AND OWNERSHIP. Except as to any lien, mortgage, or other encumbrance specifically set forth and described in paragraph 4 of this policy, this entire policy shall be void, if the interest of the Assured in the subject of this insurance be or become other than unconditional and sole lawful ownership, or if the subject of this insurance has ever been stolen or unlawfully taken prior to the issuance of this policy and not returned to the lawful owner prior to the issuance of this policy, or in case of transfer or termination of the interest of the Assured other

than by death of the Assured, or in case of any change in the nature of the insurable interest of the Assured in the property described herein either by sale or otherwise, or if this policy or any part thereof shall be assigned before loss.''

Attached to and made a part of the policy is Vendor's single interest collision indorsement reading as follows:

''It is understood that the automobile described in this policy has been delivered by the said WELLS CHEVROLET COMPANY, vendor, to W. M. Schlegel, vendee, under a Conditional Sale Contract, Title Retaining Note or subject to a chattel mortgage, under which the contract selling price is $1,753.92, and the unpaid balance is $1,300.''

The cause was tried to the court, which found that, on April 12, 1928, the insurance company executed and delivered to the plaintiff a policy of fire insurance upon the truck which is the subject-matter of this controversy, in the sum of thirteen hundred dollars; that the truck was covered by a chattel mortgage in the sum of fourteen hundred and fifty dollars, dated April 11, 1928, upon which chattel mortgage William Schlegel appears as mortgagor and the plaintiff as mortgagee; that the insured and mortgaged truck was destroyed by fire on April 28, 1928, while the insurance policy was in full force and the chattel mortgage wholly unpaid; that, though plaintiff immediately notified the insurer of the loss, and complied with all other requirements imposed upon it by the insurance contract, the insurance company refused to pay the loss; that the truck, at the time of its destruction, was of the value of thirteen hundred dollars; that Schlegel, the chattel mortgage remaining unpaid, has no right or interest in or to the money due from the insurance company.

Judgment was entered in favor of the plaintiff and against the defendant insurance company for the face of the policy, and defendant Schlegel was dismissed from the action. The defendant insurance company has appealed.

Counsel for appellant contends that, as the complaint did not allege ownership of the insured truck by anybody at any time, no cause of action was stated, therefore the demurrer to the complaint should have been sustained. Appellant also insists that the demurrer should have been sustained

". . . for the further reason that whereas in Item 4 the insurance policy states that 'The automobile described is fully paid for by assured and is not mortgaged or otherwise encumbered,' and provides in another paragraph, '. . . this entire policy shall be void, . . . if the interest of the Assured in the subject of this insurance becomes other than unconditional and sole lawful ownership, . . .' The amended complaint, Paragraph 3, discloses that respondent does not assert or claim any interest in the insured truck, other than that of mortgagee. Hence, the warranty in the policy of '. . . unconditional and sole lawful ownership' by the assureds, of which the respondent is one, was false to the knowledge of respondent at the time of the issuance of the policy from which it follows that respondent cannot recover."

The fire insurance policy runs, not alone to the mortgagor Schlegel, but also to the mortgagee respondent "Name of assured WELLS CHEVROLET COMPANY AND/OR W. M. SCHLEGEL." This action is by the mortgagee, one of the nominated assureds, to compel payment of that insurance policy. In *Emigh v. State Ins. Co.*, 3 Wash. 122, 27 Pac. 1063, upon which appellant relies, we held that the demurrer to the complaint should have been sustained, because the complaint did not set out the insurance policy sued on and did not allege proof of loss, ownership or value. We said:

"The complaint is in very general terms, and does not purport to set out the policy sued on. The demurrer was on the ground that there was not sufficient facts. In every action for insurance money there can be no recovery except upon the performance of certain acts by the insured, and the existence of certain facts; and the performance of the acts and the existence of the facts must be alleged. May, Insurance (3d ed.), § 589. The interest of the insured in the property destroyed, and the value thereof, must also appear. *Id.* § 590. In this case the complaint does not show either proof of loss, ownership, or value. It does state that notice of the fire was given to the defendant, and that plaintiff was 'damaged' by the fire in certain sums; but there is no allegation that plaintiff was the owner of the property. But notice of the fire is not proof of loss, nor would it admit evidence showing a waiver thereof; and the allegation that the insured was 'damaged' in a certain amount is no allegation of value."

The foregoing citation is not in point. In that action the plaintiff sought, as owner, to recover for the loss. There was no allegation in the complaint that the plaintiff had an insurable interest in the destroyed property, nor was the insurance policy made a part of the complaint. So, too, the complaint was defective in failing to allege performance of conditions prerequisite to the right to maintain an action on such a policy.

In the case at bar, the respondent alleged that it was claiming under the policy as a mortgagee. The policy attached to and made a part of the complaint discloses that the contract of insurance runs to the respondent mortgagee as well as to the mortgagor; that the contract definitely provides for payment, in case of loss, to the respondent or to Schlegel. The respondent clearly alleged an insurable interest.

The policy discloses, also, an insurable interest in respondent, a chattel mortgagee.

" 'Insurable Interest' is every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might directly damnify the insured." Rem. Comp. Stat., § 7033.

"The term 'Owner' and 'Encumbrancer' as used throughout this article shall be construed to include anyone having an insurable interest in property." Rem. Comp. Stat., § 7258.

The complaint shows that the respondent was entitled to sue by reason of having a beneficial interest in the insurance contract. Where an insurable interest is not averred in the complaint, if the insurable interest of the plaintiff appears on the face of the policy which has been made a part of the complaint, that constitutes a sufficient showing that the plaintiff is entitled to sue.

"It is essential for plaintiff, in his initial pleading, to show that he is entitled to sue by reason of being a party to the contract, or having a beneficial interest therein, or holding by a proper and sufficient assignment. An insurable interest must be averred where it does not appear on the face of the policy, but, where the policy, made a part of the pleading, shows or stipulates that insured has an insurable interest, further allegations of such interest are unnecessary, and no allegation of insurable interest is required where the pleading is in a statutory form which renders such averment unnecessary." 33 C. J., p. 85, § 797.

So, too, the policy in the case at bar insures both the owner mortgagor (Schlegel) and the chattel mortgagee (respondent). This is not a contract taken in the name of the mortgagor, with provision in the policy for payment to the mortgagee as its interest may appear. The promise of the appellant to pay a loss to the respondent mortgagee is direct and not collateral, hence the respondent is entitled to sue on the policy in its own name.

"If the policy is taken by the mortgagee in his own interest and for his own benefit he is the proper plaintiff and where a policy insures both the owner and a mortgagee, and the owner pays the premium on account of the mortgagee in fulfillment of his duty so to do, the promise of insurer to pay a loss to the mortgagee is direct and not collateral, and so entitles the mortgagee to sue thereon in his own name." 26 C. J., p. 485, § 681.

The respondent is a party to the insurance contract. This is not a situation where the policy makes the loss payable to a third party, as its interest may appear, hence the case of *Inland Finance Co. v. Home Insurance Co.*, 134 Wash. 485, 236 Pac. 73, is not in point. In that case, the fire insurance policy ran to a mortgagor, and provided that the loss, if any, was payable to the mortgagee, as his interest might appear.

We cannot follow the argument of counsel that the demurrer should have been sustained, because of the breach of warranty in the policy of "unconditional and sole lawful ownership" by the assureds; that the insurance contract provides that the insured property is not mortgaged or otherwise encumbered.

The pertinent language of the policy is quoted above. From that, it will be seen that the policy runs to both respondent and Schlegel; that the interest of Schlegel is that of a vendee and mortgagor; that the interest of the respondent is that of vendor and chattel mortgagee; that the truck is mortgaged by the vendee to the respondent vendor in a certain amount. No misrepresentation is apparent on the face of the contract. If otherwise encumbered than as shown by the insurance contract, that fact would be an affirmative defense to be alleged by the insurer. The burden of proving that the ownership of respondent and Schlegel was not sole and unconditional, was on the appellant insurer.

Surely, appellant does not contend that, because respondent is shown by the policy as the mortgagee, and Schlegel is disclosed by that contract as the mortgagor of the truck, the ownership of those two parties is not sole and unconditional. The rule as to sole and unconditional ownership is as follows:

"Such a clause applies to conditions existing at the date of the policy, and not to future changes in title. The just and reasonable purpose in requiring the insured to have the unconditional and sole ownership of the property insured is to give protection only to those upon whom the loss insured against would inevitably fall but for the insurance, and to avoid taking risks for those whose lack of interest or whose contingent interest in the property might tend to encourage carelessness or wrongdoing in the use or preservation of the property. By fair construction and intendment the 'unconditional and sole ownership' of property for the purposes of insurance is in those upon whom the loss insured against would certainly fall, not as a matter of mere contract obligation, but as the result of real bona fide rights in the property insured. To be unconditional and sole an interest must be completely vested in the assured, not contingent or conditional nor for others, nor in common, but of such nature that the assured must sustain injury or loss if the property is destroyed, and this is so whether the title is legal or equitable. An insured's ownership is sole when no one else has any interest in the property as owner, and is unconditional when the quality of the estate is not limited or affected by any condition. The burden of proving that the ownership of the insured was not sole and unconditional is on the insurer." 14 R. C. L., p. 1052, § 229.

If there were a breach of warranty, as claimed by the appellant, that was an affirmative defense, which the appellant should have pleaded and proved. It could not be reached by demurrer.

Appellant next contends that not only does the complaint fail to allege title, but the evidence con-

clusively shows that title to the truck was never, at any time, vested in Schlegel.

On August 27, 1927, J. E. Melton purchased of Riegel Brothers, on conditional sale contract, a Dodge-Graham truck for eighteen hundred dollars. That truck had been sold new four months previously to J. A. Brockshire, and, later, repossessed. In January, 1928, this truck, which was covered by one thousand dollars of insurance, was partially destroyed by fire. Brockshire, when he owned the truck, added accessories, to the value of three hundred dollars, to the truck. Melton, also, following its acquisition, had purchased accessories costing five hundred dollars, which were added to the truck.

The insurance money was paid to Riegel Brothers. The adjuster for the insurance company pronounced the truck not worth salvaging. The testimony is conflicting as to whether the adjuster told Mr. Melton he could have the truck and rebuild it. The Riegel Brothers released Melton from the conditional sale contract, and gave to him the burned truck, which, respondent contends, and there is testimony supporting that contention, was given to Melton by Riegel Brothers and by the insurance company, the latter deeming the truck not worth salvaging. There is testimony that Melton took the truck, which in its then condition was worth between three hundred and five hundred dollars, to a machine shop, and carefully rebuilt it; that he spent, with the assistance of a machinist, almost a month in rebuilding the truck, and that he expended more than two hundred and thirty-five dollars for new parts. The truck was then put to use by Melton in hauling logs.

On March 10, 1928, Melton mortgaged the truck, and other property, to the Spokane Security Finance Corporation for five hundred dollars. About a week prior

to April 11, 1928, he advised the finance company that he desired to trade the truck in on the purchase of some new trucks. The finance company authorized him orally to do so, and orally promised to release the truck from the chattel mortgage. On April 11, 1928, Melton paid one hundred dollars to the finance company upon the chattel mortgage, reducing it to a balance of two hundred dollars. On April 25th, the insurance policy which the finance company had purchased for its protection covering the truck, was returned to the insurance company for cancellation.

On April 11, 1928, Melton, Schlegel, and the Wells Chevrolet Company, entered into a deal whereby the respondent Wells Chevrolet Company sold to Melton three trucks for approximately twenty-five hundred dollars, and Melton sold to Schlegel for eighteen hundred dollars the Dodge-Graham truck, the truck that was destroyed by fire in January, 1928, and rebuilt, the same truck that is the subject-matter of this controversy. At that time, Melton owed Schlegel about five hundred and forty dollars for cutting and banking wood. Melton applied five hundred dollars of this amount as a down payment on the truck sold to Schlegel, leaving a balance due from Schlegel to Melton of thirteen hundred dollars. To secure this balance of thirteen hundred dollars, which, with interest, insurance and handling charges, amounted to $1,453.92, Schlegel executed a chattel mortgage on the truck to the respondent. The respondent accepted the chattel mortgage on Schlegel's truck, as a down payment of thirteen hundred dollars on the three trucks the respondent was selling to Melton, and took a chattel mortgage or conditional sale contract from Melton for the balance.

Schlegel did not know that the truck he purchased had been previously burned and rebuilt. There is tes-

timony that, at the time of the purchase of the truck by Schlegel from Melton for eighteen hundred dollars, that amount represented the fair value of the truck, and when it burned, about three weeks later, the truck had a value of eighteen hundred dollars, which exceeded the insurance, which was in the amount of thirteen hundred dollars.

Respondent mortgagee made such a showing of insurable interest in the insured property as entitled it to maintain an action on the policy of insurance. Schlegel was not a necessary party to the action. There is no testimony in the record that Schlegel was not the owner of the truck. Appellant did not endeavor to prove that the truck belonged to any one other than Schlegel, who, on motion of appellant, was joined as a necessary party, appellant making affidavit that Schlegel was the owner or reputed owner of the truck. Schlegel testified that he was the owner of the truck when the policy of insurance was issued, and when the fire occurred, and that he disclaimed any interest in the insurance money. This, of course, due to the fact that he had not paid the chattel mortgage of thirteen hundred dollars on the truck.

The evidence clearly establishes the fact that Schlegel was the owner and mortgagor of the truck at the time the truck was insured, and at the time of its destruction. The rule is that the burden is upon the plaintiff to establish his ownership, or other insurable interest, in the property. When a prima facie showing is made by the plaintiff of ownership or other insurable interest, if the defendant contends that the plaintiff is not the owner, or has no insurable interest in the property, the burden is upon the defendant of proving that contention, which burden in the case at bar the appellant failed to sustain.

"Where the issue is properly raised, the burden is on plaintiff to establish his ownership or other insurable interest in the property. But where a prima facie case of ownership or insurable interest is established, as by proving the issuance of a policy on the property to plaintiff, or by showing that he had an insurable interest to the amount of the policy, it then devolves on defendant to prove its contention that plaintiff was not the owner of the property or had no insurable interest therein." 26 C. J., p. 514, § 722.

▮ Appellant insists that the policy of insurance was void, because, at the time of its issuance, there was on record in the office of the auditor of Spokane County an unreleased chattel mortgage on the truck of five hundred dollars, executed March 10, 1928, by Melton in favor of the Spokane Security Finance Company.

This is the chattel mortgage, mentioned above, which the finance company on April 11, 1928, the date the insurance policy was issued to respondent and Schlegel by appellant, orally promised Melton would be released, so that the three-cornered deal described above could be made by Melton, Schlegel, and the respondent. That mortgage on that date had been reduced to two hundred dollars, and, while the mortgage appears never to have been satisfied of record, it is apparent that the respondent, Schlegel and Melton were permitted by the finance company to deal with each other as if the release had been recorded.

A few days subsequent to the agreement to release the mortgage, the insurance policy taken out by the finance company on the truck to protect its chattel mortgage thereon, was returned to the insurance company for cancellation. The president of the finance company testified that he had agreed to release the chattel mortgage before the sale of the truck by Mel-

ton to Schlegel was made. Melton testified that he had arranged to have the chattel mortgage released. Melton told the respondent that the truck was clear. Schlegel knew nothing of the mortgage.

The parties, in good faith, represented that the only encumbrance on the truck was the chattel mortgage by Schlegel to respondent. There is no showing that Schlegel or the respondent, with intent to deceive, represented to the appellant that the truck was free from encumbrances at the time the policy of insurance was issued by the appellant. The chattel mortgagee, the finance company, could waive its mortgage lien, and, by its conduct, could be estopped to enforce it. As between the parties, the lien of a chattel mortgage would be as effectively released by estoppel as by a formal written discharge of the mortgage.

"A chattel mortgagee may waive his mortgage lien, or be estopped to enforce it, by conduct inconsistent with its existence, and such waiver or estoppel need not, of course, be shown by written evidence, nor be supported by a consideration. But the acts relied on as a waiver or estoppel must have been done with knowledge. A waiver may be established by circumstances surrounding the transaction or by evidence of a general course of dealing between the parties. In determining whether there was or was not a waiver, the intention of the parties, although not controlling, is important, and the mortgagee may testify as to his intention." 11 C. J., p. 674, § 441.

Melton relied upon the parol agreement to release the chattel mortgage, and the finance company manifested its purpose to release the chattel mortgage by surrendering to the insurance company the policy of insurance on the truck issued to the finance company. Why the release was not entered of record by the finance company, does not appear. The neglect of the

finance company, in view of the good faith of the parties, can not inure to the benefit of appellant.

We have considered the other assignments of error, and find them to be without substantial merit.

The judgment should be, and it is, affirmed.

TOLMAN, C. J., PARKER, MITCHELL, and BEALS, JJ., concur.